METROCLUB CONDOMINIUM
ASSOCIATION, Appellant

v.

201–59 NORTH EIGHTH STREET
ASSOCIATES, L.P., Appellee.

Superior Court of Pennsylvania.

Argued April 10, 2012.
Filed June 12, 2012.

Steven L. Sugarman, Berwyn, for appellant.

Raymond A. Quaglia, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., BENDER, J., and COLVILLE, J.*

OPINION BY BENDER, J.

MetroClub Condominium Association ("Association") appeals from the May 3, 2011 order granting the motion for judgment on the pleadings filed by 201–59 North Eighth Street Associates, L.P. ("Declarant"), denying Association's cross motion for summary judgment, and entering judgment in Declarant's favor. The overarching question in this appeal is whether Declarant, the developer of the condominium at issue, can maintain control of a number of unassigned parking spaces, which constitute limited common elements of the condominium, under circumstances where Declarant is no longer in control of the Association's executive board, but still owns 17 units in the condominium. For the following reasons, we affirm.

On July 7, 2010, Association, a condominium association organized as a nonprofit corporation, initiated this case by filing an "Action for Declaratory Judgment" against Declarant, the limited partnership that "constructed and sold residential condominium units in a former hospital which is now known as the MetroClub." Association's brief at 6. *See also* Action for Declaratory Judgment ("Dec Action"), 7/7/10, at ¶ 1. The MetroClub contains 130 residential condominium units and includes an adjacent, enclosed parking lot with striped and numbered parking spaces. Dec Action at ¶ 12. As part of its program to market and sell the units, Declarant "offered to assign one or more Parking Spaces to unit purchasers for an additional fee." *Id.* at ¶ 13.

Declarant recorded a Declaration of Condominium for MetroClub Condominium ("Declaration") on May 11, 2005, signed only by Declarant. The purpose of recording a declaration is to create a condominium pursuant to Pennsylvania's Uniform Condominium Act ("PUCA"), 68 Pa. C.S. §§ 3103–3414. *See* 68 Pa.C.S. § 3201 ("Creation of condominium"); Declaration § 1.02 (indicating Declarant submits the condominium development to the provisions of the PUCA and "hereby creates a condominium").

Certain provisions of the Declaration give Declarant control over the unallocated parking spaces, so that it can assign those spaces to purchasers of units, or lease them to other persons, for as long as Declarant owns any unit. Specifically, Association challenges the following sections of the Declaration:

Section 5.03. *Parking Spaces—Limited Common Elements*

(a) *Assigned Parking Spaces* [1]—*Allocation by Declarant.* All automobile

---

\* Retired Senior Judge assigned to the Superior Court.

1. "Assigned Parking Space" is defined in the Declaration as "each vehicular parking space located on the Parking Lot (including all ADA Accessible Spaces) identified as such, and numbered "1" through "140" and "1A," "13A," and "96A" on the Plats and Plans, that is assigned or which Declarant reserves the

parking spaces located in the Parking Lot are reserved as Assigned Parking Spaces (including all ADA Accessible Spaces), and are restricted to use by (i) those Unit Owners other than Declarant to which each such Assigned Parking Space is assigned as a Limited Common Element appurtenant to a Unit, and (ii) as to those Assigned Parking Spaces that have not so assigned [sic], Declarant (as long as it owns any Unit). Until such time as each of the Assigned Parking Spaces is allocated as a Limited Common Element[2] appurtenant to particular Unit [sic], Declarant has the absolute right, without or without consideration [sic], to allocate Assigned Parking Spaces as Limited Common Elements appurtenant to specific units, provided that except as otherwise set forth in this Declaration, in no event shall any Unit be allocated more than three (3) Assigned Parking Spaces unless that Unit is owned by Declarant or an affiliate of Declarant. Declarant shall make such assignment either in a written recorded assignment, in the deed conveying the Unit from Declarant to the Unit Owner, or by recording an amendment to this Declaration or the Plats and Plans designating thereon the Unit to which each such Assigned Parking Space is allocated and assigned. Any assignment of an Assigned Parking Space as a Limited Common Element shall be subject to the authority of the Executive Board to reallocate Assigned Parking Spaces as set forth below in this Declaration.[3] The specific Assigned Parking Space(s) assigned to a particular Unit in connection with a sale or other conveyance of a Unit by Declarant to any Person other than Declarant shall be determined by Declarant in its sole discretion.

. . .

(d) *Allocation to Declarant.* As long as Declarant owns any Units, Declarant may assign and allocate to Units it owns Assigned Parking Spaces not allocated to other Units, regardless of (and without Declarant being subject to) any otherwise applicable limit [sic] herein on the maximum or minimum number of Assigned Parking Spaces that may be allocated to a particular Unit.

. . .

(h) *Leasing Assigned Parking Spaces.* Declarant (for so long as it owns any Unit) may lease any Assigned Parking Space not assigned as Limited Common Element appurtenant to a particular Unit to any Person, for such term and upon such conditions as Declarant, in its sole discretion, determines.

Declaration § 5.03(a), (d), & (h). As the trial court noted, these provisions "clearly contemplate[ ] the Declarant's control, and

---

right to assign as a Limited Common Element appurtenant to a Unit." Declaration § 2.02.

2. "Limited Common Elements" are "those portions of the Common Elements either described in the [PUCA] as being Limited Common Elements or described herein or in the Plats and Plans as being Limited Common Elements, including (without limitation) balconies and patios, . . . and the Assigned Parking Spaces as identified on the Plats and Plans." Declaration § 2.02.

3. As the trial court recognized, the Board's authority to re-allocate Assigned Parking

Spaces is governed by section 5.03(c) of the Declaration. This provision allows the Board to re-allocate spaces by requiring Unit Owners to exchange spaces when necessary, such as when a resident with a physical disability would require a reasonable accommodation necessitating such reallocation. *See* Declaration § 5.03(c); Trial Court Opinion (T.C.O.), 6/1/11, at 3. This provision has no impact on Declarant's right to allocate spaces, in the first instance, under the above-noted terms of the Declaration.

leasing, of unallocated parking spaces for so long as the Declarant owns any Unit." T.C.O., 6/1/11, at 3.

Indeed, Declarant continues to own 17 units in the MetroClub, and maintains control over 41 parking spaces that have not been assigned or allocated to the use of a particular unit. Association's Cross Motion for Summary Judgment, 11/16/10, at ¶ 4(i-j). Declarant also leases 34 of these spaces and retains the income. *Id.* at ¶ 4(n).

Also, in accordance with section 3303 of the PUCA, the Declaration also provided for Declarant to maintain control of Association's executive board, through the appointment of a majority of its members, from the time it recorded the Declaration until it succeeded in selling over 75% of the condominium units, which occurred on or about June 5, 2007. Dec Action at ¶¶ 9–10. At that point, Declarant's "representatives on the Executive Board resigned in accordance with Section 3303 of the Act." *Id.* The time frame within which Declarant controlled the board is known as the "Declarant Control Period." *Id.* at ¶ 9. *See also* Defendant's Answer and New Matter to Plaintiff's Action for Declaratory Judgment ("Answer"), 9/9/10, at ¶¶ 9–12 (admitting Declarant Control Period ended on June 5, 2007). Since the termination of the Declarant Control Period, "the business and affairs of the Association have been conducted exclusively by an Executive Board elected by owners of units within the MetroClub." Dec Action at ¶ 12. *See also* Answer at ¶¶ 12–17 (admitting this averment).

Association argued that Declarant "breached its obligation to the Association and owners of Units within the MetroClub to act in good faith" in its refusal to "cede control of the unallocated Parking Spaces to the Association notwithstanding expiration of the Declarant Control Period and

written demand therefore." Dec Action at ¶ 38. Specifically, Association argued that Declarant's continued control of the unallocated parking spaces after the expiration of the Declarant Control Period violated section 3303 of the PUCA, which relates to control of the executive board. *Id.* at ¶¶ 39–40. On this basis, Association sought declaratory relief from the trial court, requesting that the court enter an order stating that Declarant's rights to the unassigned spaces expired upon the termination of the Declarant Control Period and vesting control of these spaces with the Association's executive board. *Id.* at p. 10.

Declarant filed an answer and new matter on September 9, 2010. In that pleading, Declarant asserted, *inter alia,* its continued right to allocate parking spaces, as per the Declaration, despite the fact it no longer controlled Association's board. Declarant also argued that PUCA section 3303, which Association relied upon in its complaint in support of its argument that Declarant should cede control of the parking spaces, only applied to voting and control of the Association's executive board, and had nothing to do with Declarant's rights under the Declaration to assign parking spaces to units it sells or to lease unassigned parking spaces. Answer at ¶¶ 7–9. On September 15, 2010, Association filed a reply refuting these arguments.

Thereafter, on October 22, 2010, Declarant filed a motion for judgment on the pleadings, asserting that provisions of the Declaration relied upon by Association actually support Declarant's position that it continues to maintain control of the unassigned parking spaces despite the termination of its control of the board, an unrelated issue. Association filed an answer and a cross motion for summary judgment on November 16, 2010. In reliance on various provisions of the Declaration, Association's bylaws, and the PUCA, Associa-

tion requested, *inter alia,* that the court enter an order declaring that Declarant's control of the parking spaces terminated with the conclusion of the Declarant Control Period, and asked the court to vest, in the Association's executive board, "exclusive authority to lease or make all further allocations of Parking Spaces[.]" Motion for Summary Judgment at 7. Of course, on December 15, 2010, Declarant filed a response to Association's motion for summary judgment, once again asserting that its control over the unallocated parking spaces did not end with the conclusion of the Declarant Control Period.

The trial court agreed with Declarant. On May 3, 2011, the court entered an order granting Declarant's motion for judgment on the pleadings, denying Association's cross motion for summary judgment, and entering judgment in Declarant's favor. The court concluded that sections 5.03(a), (d), and (h) of the Declaration "clearly contemplate[ ] the Declarant's continued control, and leasing, of unallocated parking spaces for so long as the Declarant owns any Unit." T.C.O., 6/1/11, at 3. The court also determined that sections 3205(7) and 3209(c) of the PUCA, discussed below, did not prohibit, but rather, permitted, "Declarant to reserve for itself in the Declaration the power to allocate parking spaces as limited common elements" even after "Declarant ceases to control the Condominium." *Id.* The court stated, "[f]urthermore, the [PUCA] does not prohibit the Declarant from leasing parking spaces that it has not yet allocated while the Declarant attempts to sell the remaining Units (and parking spaces) it owns." *Id.*

Association filed this timely appeal. Although the trial court did not order Association to file a concise statement of matters complained of on appeal pursuant to Pa. R.A.P. 1925(b), it filed an additional opinion in support of its order on June 1, 2011, which facilitates our review.

Association sets forth the following Statement of Questions Involved in its brief to this Court:

1. Whether a developer of a residential condominium may retain indefinite control and exclusive use of a significant number of common element parking spaces within the condominium after expiration of the declarant rights period set forth in our Uniform Condominium Act and after the responsibility to maintain, repair and insure such common elements has passed to the condominium association and its members?

2. Whether a declaration that grants the Declarant exclusive control over a significant number of common element parking spaces but which also vests control of all common elements in the unit owners through an elected executive board is inconsistent and ambiguous such that the Declaration should be construed against its drafter?

3. Whether a Declarant waived its right to allocate common element parking spaces by failing to exercise that right prior to expiration of the statutory Declarant Control Period?

Association's Brief at 4.

First, we recognize the applicable standard and scope of review:

The standard of review of a grant of a motion for judgment on the pleadings is limited. A motion for judgment on the pleadings will be granted where, on the facts averred, the law says with certainty that no recovery is possible. Since this matter presents a legal question, the scope of review is plenary.

*Dietz v. Chase Home Finance, LLC,* 2012 PA Super 79, 2012 WL 1080303, at *2 (Pa.Super. April 2, 2012) (citation omitted). Similarly, with regard to the court's denial

of Association's cross-motion for summary judgment, we note:

> Under our standard of review of an order granting or denying a motion for summary judgment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Summary judgment is properly entered only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Our scope of review is plenary, and our review of a question of law, as presented here, is *de novo*.

*Barnett v. SKF USA, Inc.*, —— Pa. ——, 38 A.3d 770, 776 n. 6 (2012) (citations omitted).

■ Before addressing each issue, we note that, underlying the arguments in Association's first and second issues, is the premise that the Declaration is a contract. Association cites *Wrenfield Homeowners Association, Inc. v. DeYoung*, 410 Pa.Super. 621, 600 A.2d 960, 962–63 (1991), for this proposition. In *Wrenfield,* the homeowners association sued a homeowner for unpaid assessments, under a "Declaration of Covenants, Easements and Restrictions." The court concluded that the homeowners in the townhome community of Wrenfield were members of the homeowners association and, therefore, were bound by the recorded Declaration of Covenants, Easements and Restrictions. *Id.* at 623–24, 600 A.2d 960. Importantly, this document was not a declaration of condominium, and the court specifically indicated that the declaration of covenants was not subject to the PUCA. *Id.* at 963 n. 2. Moreover, the declaration in *Wrenfield* was construed as a contract between the homeowners and their nonprofit homeowners association, not between the developer or a declarant forming the community and the association.

In contrast, the Declaration in this case was recorded specifically for the purpose of creating a condominium pursuant to the PUCA, and it was signed by only one party, Declarant. *See* 68 Pa.C.S. § 3201 ("A condominium may be created pursuant to this subpart only by recording a declaration executed, in the same manner as a deed, by all persons whose interests in the real estate will be conveyed to unit owners...."); Declaration § 1.02 (indicating Declarant submits the condominium development to the provisions of the PUCA and "hereby creates a condominium"). Although the PUCA does not define "Declaration" in the definitions section of the statute (68 Pa.C.S. § 3103), the comments to section 3219, pertaining to amendments to a declaration of condominium, recognize a declaration of condominium as the "perpetual governing instrument for the condominium," which "may be amended by various parties at various times in the life of the project." 68 Pa.C.S. § 3219, Unif. Law Cmt. 1. *See also* Unif. Condominium Act § 1–103 (" 'Declaration' means any instruments, however denominated, that create a condominium, and any amendments to those instruments."); *Condominium Ass'n Court of Old Swedes v. Stein–O'Brien*, 973 A.2d 475, 481 (Pa.Cmwlth. 2009) ("A condominium is created by the filing of a declaration, ... and the rules of condominium ownership are governed by the enabling statute, the terms of the condominium declaration, and the condominium association's by-laws, if any.").

Also, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." RESTATEMENT (SECOND) OF CONTRACTS 2d § 17(1) (1979). *See also Helpin v. Trustees of Univ. of Pennsylvania*, 969 A.2d 601, 610–611 (Pa.Su-

per.2009) ("We will find the parties' agreement enforceable as a contract "when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity."). Association fails to note these basic elements of an enforceable contract, let alone persuade us that the Declaration constitutes a contract. Accordingly, Association's argument that the Declaration of Condominium constitutes a contract between Declarant and Association, is unavailing.

■ Nevertheless, as recognized by the court in *Country Classics at Morgan Hill Homeowners' Association, Inc. v. Country Classics at Morgan Hill, LLC,* 780 F.Supp.2d 367, 374 (E.D.Pa.2011), "Pennsylvania courts have examined condominium declarations under the umbrella of general contract law." The PUCA also contemplates application of general "principles of law and equity" including, *inter alia,* "the law relative to capacity to contract, … estoppel, fraud, misrepresentation, duress, coercion, mistake, … substantial performance or other validating or invalidating cause" so long as they are consistent with the PUCA. 68 Pa.C.S. § 3108. Accordingly, although Association fails to persuade us the Declaration is a contract, like other courts, where appropriate, we may apply principles related to contract law when examining the Declaration.

■ We now turn to the various arguments Association presents within its first issue. Overall, Association contends that Section 5.03 of the Declaration, allowing Declarant to retain control of unallocated Assigned Parking Spaces after ceding control of the Association's executive board, is void against public policy, contradicts the legislative intent underlying the PUCA, and results in unjust enrichment to Declarant. Association's brief at 12–27. Specifically, Association asserts that "[u]ntil Parking Spaces are allocated to a particular unit, they remained, and continue to remain, general common elements." *Id.* at 14.[4] Association posits that, once the Declarant Control Period ended, Declarant no longer had the right to control the "common elements of which the Parking Spaces are a part[.]" *Id.* at 19.

Association directs us to section 3303 of the PUCA, for the proposition that a shift in the control of the executive board, from Declarant to Association, contemplates a shift in the control of the unallocated Assigned Parking Spaces. Based on this interpretation of section 3303, Association asserts that those portions of section 5.03 of the Declaration, allowing Declarant to retain control of the spaces after ceding control of the board, violate public policy and the legislative intent underlying section 3303 of the PUCA. The trial court disagreed, and we do too.

Section 3303 of the PUCA reads in pertinent part as follows:

**§ 3303. Executive board members and officers**

. . .

**(c) Status during period of declarant control.**—Subject to subsection (d), the declaration may provide for a period of declarant control of the association during which period a declarant or persons designated by him may appoint and remove the officers and members of the

---

4. Association cites nothing in support of its proposition that the unallocated spaces are general common elements. To the contrary, as noted in footnotes 1 and 2, *supra,* the Declaration clearly defines Assigned Parking Spaces as Limited Common Elements. Declaration § 2.02. Additionally, the definition for "General Common Elements" expressly excludes the Assigned Parking Spaces. *Id.*

executive board. Any period of declarant control extends from the date of the first conveyance of a unit to a person other than a declarant for a period not exceeding seven years in the case of a flexible condominium containing convertible real estate or to which additional real estate may be added, or five years in the case of any other condominium. Regardless of the period provided in the declaration, a period of declarant control terminates no later than 180 days after conveyance of 75% of the units to unit owners other than a declarant. A declarant may voluntarily surrender the right to appoint and remove officers and members of the executive board before termination of that period but in that event he may require, for the duration of the period of declarant control, that specified actions of the association or executive board, as described in a recorded instrument executed by the declarant, be approved by the declarant before they become effective.

**(d) Election of members during transfer of declarant control.**—Not later than 60 days after conveyance of 25% of the units to unit owners other than a declarant, not less than 25% of the members of the executive board shall be elected by unit owners other than the declarant. Not later than 60 days after conveyance of 50% of the units to unit owners other than a declarant, not less than 33 1/3% of the members of the executive board shall be elected by unit owners other than the declarant.

68 Pa.C.S. § 3303.

In interpreting these provisions, we recognize some basic principles of statutory interpretation:

The object of all statutory interpretation is to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a); *McGrory v. Commonwealth of Pennsylvania, Department of Transportation,* 591 Pa. 56, 915 A.2d 1155, 1158 (2007). In general, the best indication of legislative intent is the plain text of the statute. *McGrory, supra.* However, when the words of the statute are not explicit, the General Assembly's intent may be ascertained by considering other factors, including the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; a former version of the law or other statutes on a similar subject; and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c); *Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185, 189 (2005). In ascertaining the General Assembly's intent, we presume that the legislators have not intended an absurd or unreasonable result, and that they intend to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(1) and (5).

*Whalen v. Com., Dept. of Transp., Bureau of Driver Licensing,* —— Pa. ——, 32 A.3d 677, 679 (2011).

Association points to no ambiguity in the language of section 3303 that would cause us to look beyond its plain and explicit terms to effectuate the legislative intent underlying it. Rather, because the terms are explicit, our best indication of the legislature's intent is the plain language of the statute. Frankly, this section pertains only to appointment of officers and members of the executive board of a condominium association. It provides for progressively decreasing control of the board by the declarant, as increasing percentages of units are conveyed to unit owners other than the declarant. *See also* Unif. Condominium Act § 3–103 cmt. 3 (recognizing "the practical necessity for the declarant to control the association during the developmental phases of a condominium pro-

ject"). Section 3303 has no bearing on a declarant's control over certain limited common elements, like the unallocated Assigned Parking Spaces in the instant case. Nothing in the plain text of this section can reasonably be interpreted to mean that control of these spaces must shift to Association once Declarant no longer has the power to appoint a controlling number of officers or members of Association's executive board.

In fact, such a result would be unreasonable from Declarant's perspective, in its efforts to sell the remaining units. Section 3303(a) mandates that "regardless of the period provided in the declaration, a period of declarant control [of the board] terminates no later than 180 days after conveyance of 75% of the units to unit owners other than a declarant." If control of the Assigned Parking Spaces shifted to Association at this point, with Declarant still owning 25% of the units (and in fact, Declarant still owned 17 units well past the end of the Declarant Control Period in June 2007), Declarant would no longer have the authority to assign any parking spaces to new unit buyers, thereby hampering the marketing and selling of the remaining units. We do not believe our legislature intended such a result under section 3303.

In fact, the trial court in the instant case pointed to two sections of the PUCA that support the validity of section 5.03 of the Declaration. The following PUCA sections provide for the allocation of limited common elements, deferring to provisions in the declaration, as follows:

### § 3205. Contents of declaration; all condominiums

The declaration for a condominium must contain:

. . .

(7) A description of any common elements not within the boundaries of any convertible real estate which may be allocated subsequently as limited common elements together with a statement that they may be so allocated and a description of the method by which the allocations are to be made.

68 Pa.C.S. § 3205. Additionally, section 3209, entitled, "Limited common elements," indicates (with the exception of limited common elements not at issue here), "the declaration shall specify to which unit or units each limited common element is allocated." *Id.* at § 3209(a). The trial court also recognized:

**(c) Common elements not previously allocated.**—A common element not previously allocated as a limited common element may not be so allocated except pursuant to provisions in the declaration made in accordance with section 3205(7) (relating to contents of declaration; all condominiums). The declaration may provide that the allocations shall be made by deeds or assignments executed by the declarant or the association, or by amendments to the declaration.

*Id.* at § 3209(c).

In compliance with these statutory provisions, section 5.03 of the Declaration explains how the Assigned Parking Spaces are allocated and indicates that unallocated Assigned Parking Spaces are restricted to use by Declarant, but only for so long as it owns any Unit. Declaration § 5.03(a)(ii). We agree with the trial court that these PUCA provisions "permit the Declarant to reserve for itself in the Declaration the power to allocate parking spaces as limited common elements" and that "[n]othing in the statute prohibits the Declarant from continuing to exercise this power to allocate after the Declarant ceases to control the Condominium." T.C.O., 6/1/11, at 3. We also agree with the trial court's conclusion that nothing in the PUCA prohibited

Declarant from leasing the spaces it had not yet allocated while it attempts to sell the remaining units. *Id.* In this regard, section 5.03 of the Declaration does not conflict with the PUCA and is not void.

■ Association also argues, within its first issue, that Declarant is being unjustly enriched, as it "continues to assert the right to financially benefit from 41 Parking Spaces to the economic detriment of all of the other condominium unit owners." Association's brief at 13–14.

> "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law."
>
> [ ]"A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another."
>
> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. . . .

*Discover Bank v. Stucka,* 33 A.3d 82, 88–89 (Pa.Super.2011) (citations omitted).

Association fails to establish that Declarant is not paying any value for its control of the unallocated Assigned Parking Spaces, because Declarant can only maintain this control as long as it owns any unit, and, as long as it owns any unit, it must pay its proportionate share of common expenses. Specifically, Association maintains that Declarant's control over the unallocated Assigned Parking Spaces is "indefinite." Association's brief at 17. However, section 5.03 of the Declaration, as noted above, indicates throughout that Declarant's control of the unallocated Assigned Parking Spaces is limited to as long as it owns any unit, not indefinitely. In turn, in conjunction with the units owned, a "Common Expense Liability" is "assessed against each Unit in accordance with its Percentage Interest." Declaration Section 8.01. "Common Expense Liability" is "the liability appurtenant to each Unit to pay the share of the Common Expenses and Assessments that is allocated to such Unit under this Declaration and the Act." *Id.* at § 2.01. Every Unit Owner is obligated "to pay its Percentage Interest of Common Expenses. . . ." *Id.* As a Unit Owner of 17 Units, Declarant is obligated to pay its assessed fees and shares of the common expenses in accordance with these provisions.[5] Accordingly, Declarant is "paying value" for any benefit it receives as a result of its control of the unallocated Assigned Parking Spaces pursuant to Declaration section 5.03. In this regard, Association's unjust enrichment argument fails.

---

5. Although Association does not mention this, "Limited Common Expenses" are "the expenses of maintaining, repairing, insuring and/or replacing any Limited Common Element, but only if and to the extent that this Declaration expressly provides, or the Executive Board subsequently determines, that such expenses will be segregated from General Common Expenses and charged as Limited Common Expenses." Declaration § 2.02. *See also* 68 Pa.C.S. § 3314(c) (governing special allocations of expenses pertaining to limited common units, "[e]xcept as provided by the declaration").

The parties do not indicate if the Limited Common Expenses related to the unallocated Assigned Parking Spaces are segregated from the General Common Expenses or otherwise specially allocated. In any event, we do know that Declarant continues to own 17 Units and is liable for its share of assessments and expenses in relation to that proportionate share, as described above.

Later in its brief, in a related argument, Association asserts:

[ ]Notwithstanding the fact that the Parking Spaces are common elements owned by all of the Association's members, and the fact that all unit owners must fund the cost to maintain, repair and insure the Parking Spaces, Declarant seeks, through self-serving Declaration provisions, to benefit financially, for an indefinite period of time, at the expense of residential unit purchasers. In effect, Declarant asserts a right to derive a significant profit from other people's property.

Association's brief at 20. In support of this conclusion, Association cites the following:

Like all other common elements, limited common elements are owned in common by all unit owners. The use of a limited common element, however, is reserved to less than all of the unit owners. Unless the declaration provides otherwise, the association is responsible for the upkeep of a limited common element and the cost of such upkeep is assessed against all the units.

*Id.* (quoting 68 Pa.C.S. § 3209, Unif. Law Cmt. 1). *See also* 68 Pa.C.S. § 3103 (defining "Condominium" as "[r]eal estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions. Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners").

As explained above, section 5.03 of the Declaration only gives Declarant control of the unallocated Assigned Parking Spaces for so long as it owns any unit and, as a current owner of 17 units, like the other unit owners, it contributes to the Common Expenses. Also, as a unit owner, it too has an ownership interest in the limited common elements. Association's declaratory judgment action sought only to have the court assign authority to control the unallocated Assigned Parking Spaces to Association, but Association made no arguments with regard to the transfer or reallocation of any ownership interests in any property rights pertaining to these spaces.

Similarly, Association did not make any claim on behalf of Unit Owners, for example, that, as common owners of the unallocated Assigned Parking Spaces, they were entitled to share in any profits derived from those spaces or that they were entitled to any credits related to surplus funds from the operation of limited common elements. *See* 68 Pa.C.S. § 3313 (pertaining to credits for surplus funds). *See also, e.g., Lake v. Woodcreek Homeowners Ass'n,* 169 Wash.2d 516, 243 P.3d 1283, 1286 (2010) (noting Washington statute indicating condominium owners had right to share in profits from the condominium property); *Caprer v. Nussbaum,* 36 A.D.3d 176, 825 N.Y.S.2d 55, 63 (2006) (noting New York statute indicating that common profits and expenses are respectively distributed among, and charged to the unit owners in accordance with their respective interests). Nor did Association claim, as explained in footnote 5, *supra,* that any limited common expenses attributable to the unallocated Assigned Parking Spaces should be separated from the General Common Expenses. Association's sole claim in its complaint for declaratory relief related to its purported authority to control the unallocated spaces from the time of the termination of the Declarant Control Period. Yet, as noted above, although limited common elements are owned in common, their use is reserved to fewer than all. 68 Pa.C.S. § 3209, Unif. Law Cmt. 1. Thus, Declarant's authority to control the spaces does not violate the PUCA.

Finally, as for Association's claim that Declarant is deriving "significant profit from other people's property[,]" Association's brief at 20, (in addition to failing to recognize Declarant's liability for its share of General Common Expenses, as an owner of 17 units), we find the following argument of Declarant persuasive:

It is no more inequitable for other Association members to contribute to the upkeep of unallocated Assigned Parking Spaces than it is for Declarant to contribute its substantial share to the upkeep of the 112 Assigned Parking Spaces allocated as Limited Common Elements appurtenant to other units— or, for that matter, for unit owners without parking to contribute to the upkeep of Assigned Parking Spaces from which they personally derive no benefit at all.

Declarant's brief at 12–13.

■ Next, also within its first issue, Association argues that section 5.03 of the Declaration violates the following PUCA provision:

**§ 3104. Variation by agreement**

Except as expressly provided in this subpart [*i.e.*, the PUCA], provisions of this subpart may not be varied by agreement and rights conferred by this subpart may not be waived. A declarant may not act under a power of attorney or use any other device to evade the limitations or prohibitions of this subpart or the declaration.

68 Pa.C.S. § 3104.[6] As explained above, the trial court properly relied on sections 3205(7) and 3209(c) of the PUCA in determining that the PUCA permits the Declarant to allocate Assigned Parking Spaces as limited common elements, for so long as it owns any Unit, in accordance with section 5.03 of the Declaration. In fact, both sections 3205(7) and 3209(c) defer expressly to the Declaration with regard to how limited common elements are to be allocated. Moreover, there is nothing in the record to suggest that, for example, Declarant sought to obtain powers of attorney from existing Unit Owners, or used any other device, in order to evade any limitations or prohibitions in the PUCA. Accordingly, Association's reliance on section 3104 of the PUCA to invalidate section 5.03 of the Declaration is unavailing.

■ Association next points to section 3302, which outlines certain powers of the unit owners' association, which are, however, "subject to the provisions of the declaration[.]" Some of these powers include, for example, the power to adopt and amend bylaws, make contracts, hire and terminate managing agents, "[r]egulate the use . . . of common elements; to make reasonable accommodations or permit reasonable modifications to be made to . . . the limited common elements or the common elements to accommodate handicapped . . . unit owners[;]" and, more generally, exercise any powers conferred by the declaration or bylaws. 68 Pa.C.S. § 3302(a)(1), (3), (5), (6), (14). Association directs us specifically to subsection (b), which reads:

**(b) Restriction on limitations in declaration.**—Notwithstanding subsection (a), the declaration may not impose limi-

---

6. Additionally, the comments following this section read, in part: "While freedom of contract is a principle of this Act, and variation by agreement is accordingly widely available, freedom of contract does not extend so far as to permit parties to . . . enter into contracts which are unconscionable when viewed as a whole, or which contain unconscionable terms." 68 Pa.C.S. § 3104 (Uniform Law Cmt. 5). Although Association cites section 3104, it does not note this comment (or 68 Pa.C.S. § 3111 which allows the court to refuse to enforce unconscionable terms), and it does not assert or develop an argument that the provisions of the Declaration are unconscionable.

tations on the power of the association to deal with the declarant that are more restrictive than the limitations imposed on the power of the association to deal with other persons.

68 Pa.C.S. § 3302(b). Association argues that "Section 5.03(c) of the condominium Declaration impermissibly impose[s] limitations on the Association's ability to deal with the Declarant in the same manner it deals with others who might seek to use or control the Parking Spaces[.]" Association's brief at 21. Association provides no further explanation. Association fails to identify these other parties—are they other unit owners, persons that lease units, persons that reside with others who own or lease units, or persons or entities unassociated with the condominium in any way? On what basis would these other unspecified parties have rights to use or control the Assigned Parking Spaces? How is the Association's power restricted when dealing with Declarant, who still owns 17 Units (and is obligated to pay its share of fees associated with those units), as compared to its power to deal with these unspecified "other" parties? How does Declarant's right to allocate Assigned Parking Spaces, as the developer of the condominium trying to market and sell units, equate to a limitation on the Association to "deal with Declarant" that is more restrictive than its dealing with others? We will not act as counsel for Association and develop arguments on its behalf in order to answer these questions. *See Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 395–96 (Pa.Super.2011).

■ Finally, within its first issue, Association points to the "Definitions" section of the PUCA, containing the following enumerated list of "special declarant rights":

"**Special declarant rights.**" Rights reserved for the benefit of a declarant to:

(1) Complete improvements indicated on plats and plans filed with the declaration (section 3210).

(2) Convert convertible real estate in a flexible condominium (section 3211).

(3) Add additional real estate to a flexible condominium (section 3211).

(4) Withdraw withdrawable real estate from a flexible condominium (section 3212).

(5) Convert a unit into two or more units, common elements, or into two or more units and common elements (section 3215).

(6) Maintain offices, signs and models (section 3217).

(7) Use easements through the common elements for the purpose of making improvements within the condominium or within any convertible or additional real estate (section 3218).

(8) Cause the condominium to be merged or consolidated with another condominium (section 3223).

(9) Make the condominium subject to a master association (section 3222).

(10) Appoint or remove any officer of the association or any master association or any executive board member during any period of declarant control (section 3303(c)).

68 Pa.C.S. § 3103. The definition, "special declarant rights," seeks to isolate those rights reserved for the benefit of a declarant which are unique to the declarant and not shared in common with other unit owners. The list, while short, encompasses virtually every significant right which a declarant might seek in the course of creating or expanding a condominium.

*Id.* at Unif. Law Cmt. 13. Association argues that Declarant's right to control unallocated Assigned Parking Spaces is not included in the above list and should

be invalidated on that basis.[7] Again, we disagree.

First, the above comment indicates that the list is not exhaustive, though encompassing "virtually every significant right" a declarant may need in developing a condominium. Second, other sections of the PUCA not referenced in the above list of special declarant rights, such as sections 3205(7) and 3209(c), relied upon by the trial court here to uphold section 5.03 of the Declaration, provide flexibility in the terms of a declaration with regard to the allocation of limited common elements by either the declarant or the association. *See also, e.g.,* 68 Pa.C.S. § 3314, Unif. Law. Cmt. 1 (contemplating that a declarant may pay all condominium expenses, rather than assessing each unit individually). Accordingly, we conclude that the legislature did not intend to confine all conceivable declarant powers to those specifically enumerated in the "Special declarant rights" list in the definitions section of the PUCA.

Nevertheless, Association argues that the following provision of the PUCA has the effect of circumscribing those special declarant rights that "may survive the expiration of the Declarant Control Period[,]" none of which include the authority to control unallocated Assigned Parking Spaces. Association's brief at 23.

**§ 3217. Declarant's offices, models and signs**

**(a) Common elements.**—A declarant may maintain offices and models in the common element portion of the condominium only in connection with the management, sale or rental of units owned by the declarant in the condominium if the declaration so provides and specifies

the rights of a declarant with regard to the number, size, location and relocation thereof. At such time as a declarant ceases to be a unit owner, he ceases to have any rights with regard to such portions of the common elements so used unless such portions are removed promptly from the condominium in accordance with a right to remove reserved in the declaration. Upon the relocation of a model or office constituting a common element, a declarant may remove all personal property and fixtures therefrom. Any fixtures not so removed shall be deemed common elements, and any personal property not so removed shall be deemed the property of the association.

68 Pa.C.S. § 3217(a). Nothing in this section indicates that these are the only things Declarant can do after the Declarant Control Period expires, as Association contends. Association's attempt to connect the expiration of the Declarant Control Period, which relates to Declarant's power to appoint and remove members of Association's Executive Board, to these unrelated sections of the PUCA, pertaining to its right to maintain sales offices, models, and signs, is unavailing. In sum, Association's first issue lacks merit.

■ In its second issue, Association argues that the trial court "failed to address or consider that the Declaration provisions cited in its Opinion are contradicted by other sections of the condominium Declaration and in the Association's By–Laws." Association's brief at 27. Again, Association proceeds on the premise that the Declaration is a contract, and that "ambiguous contracts are construed against the drafter and in favor of the other party so long as

---

7. We presume Association is relying on the principle of construction, *expressio unius est exclusio alterius,* where "the inclusion of a specific matter in a statute implies the exclu-

sion of other matters." *Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity,* 32 A.3d 800, 817 n. 14 (Pa.Super.2011).

the contrary interpretation is reasonable." *Id.* (citing *Jay Twp. Auth. v. Cummins,* 773 A.2d 828, 831 fn. 3 (Pa.Cmwlth.2001)). Even applying contract interpretation principles to the Declaration and bylaws, however, we conclude that there is no ambiguity or conflict.

Specifically, Association argues that section 5.03 of the Declaration conflicts with sections 6.01 and 6.05 of the Declaration and with sections 3.1 and 3.9 of the bylaws.[8] Association's brief at 27–31. First, we set forth the Declaration provisions:

Section 6.01. *The Association; Powers.* The Association is a Pennsylvania nonstock, nonprofit corporation owned by all of the Unit Owners, and shall have all duties, rights, privileges, functions and responsibilities set forth in the Act and the Condominium Documents, including, without limitation all powers enumerated in Section 3302(a)[9] of the Act, and the right and power to do all other things necessary or expedient in order to carry out all such powers, rights, privileges, duties and functions of the Association, and all powers incidental thereto.

. . .

Section 6.05. *Powers and Duties of Executive Board.*

(a) **Subject to the other provisions of this Declaration** and the By-Laws, the Executive Board shall have the full power and authority to act on behalf of the Association, and except as otherwise expressly required by the Condominium Documents or the Act, actions and decisions of the Executive Board need not be submitted to or approved by the Members.

(b) The Executive Board possesses, and shall possess, all of the duties and powers granted to the Executive Board under the Act.

Declaration §§ 6.01, 6.05(a), (b) (emphasis added). Article III of the bylaws, entitled "Executive Board," contains the following:

Section 3.1 *Composition.* The business, operation and affairs of the Property and of the Association shall be managed on behalf of the Unit Owners, in compliance with and subject to the Act, the Declaration and these By-Laws, by a board initially composed of three (3), and ultimately composed of five (5) natural persons. Such board is herein and in the Declaration called the "Executive Board."

. . .

Section 3.9 *Powers of the Executive Board.*

(a) *Enumeration.* The Executive Board shall have all of the powers and duties necessary to administer and manage the business, operations and affairs of the Property and the Association. Such duties of the Executive Board include, but are not limited to, the powers granted by the Act and the Corporation Law, and the following:

. . .

8. In this regard, we note:
   § 3203. **Construction and validity of declaration and bylaws**
   (a) **Provisions severable.**—All provisions of the declaration and bylaws are severable.
   . . .
   (c) **Conflict between declaration and bylaws.**—In the event of a conflict between the provisions of the declaration and the bylaws, the declaration prevails except to the extent the declaration is inconsistent with this subpart.
   68 Pa.C.S. § 3203(a), (c).

9. As noted above, section 3302 of the PUCA, "Powers of unit owners' association," enumerates a condominium association's powers, all of which are expressly "[s]ubject to the provisions of the declaration[.]" 68 Pa.C.S. § 3302(a) (emphasis added).

(4) Providing for the operation, care, upkeep and maintenance of the Common Elements;

(5) Designating, hiring and dismissing the personnel necessary for the maintenance, operation, repair and replacement of the Association and the Common Elements . . .

(6) Making, amending and enforcing Regulations and policies relating to the use and enjoyment of the Units and the Common Elements **to the extent not inconsistent with the Declaration** or the Act;

. . .

(8) Making or contracting for the making of repairs, additions and improvements to or alterations of the Common Elements;

. . .

(10) Obtaining and carrying insurance against casualties and liabilities as provided in the Declaration and the Act and paying the premium costs thereof;

. . .

(17) Reviewing and approving proposed leases of Units and Assigned Parking Spaces **(other than leases made by Declarant, which shall not be subject to review or approval by the Executive Board)**; and

(18) Exercising all other powers, rights, duties and privileges as are set forth in the Declaration, and all powers incidental to or necessary to carry out the powers of the Executive Board and the purposes of the Association as set forth in the Act, the Declaration and these By–Laws.

By–Laws of MetroClub Condominium Association, §§ 3.1, 3.9(4)-(6), (8), (10), (17)-(18) (emphasis added). Association argues that these sections of the Declaration and bylaws provide the Association with "broad powers to control the common elements[,]" including the unallocated Assigned Parking Spaces, and therefore conflict with section 5.03 of the Declaration, giving Declarant the authority to allocate or lease unallocated Assigned Parking Spaces beyond the Declarant Control Period. Association's brief at 30.

We agree that these provisions do give Association broad powers in the management and operations of the condominium. However, the above-emphasized language reveals that these broad powers are subject to provisions in the Declaration, which includes section 5.03. Thus, we perceive no ambiguity or inconsistency among these provisions.

■■■■■ In its final issue, Association argues that Declarant waived its right to allocate any of the remaining 41 unallocated Assigned Parking Spaces because it failed to do so prior to the termination of the Declarant Control Period. Association's brief at 31–33.

> Waiver is the voluntary and intentional abandonment or relinquishment of a known right. "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary."

*Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156–1157 (Pa.Super.2009) (citations omitted). However, as explained in full above, Declarant's right to allocate the remaining unallocated Assigned Parking Spaces did not terminate at the conclusion of the Declarant Control Period. Moreover, Association points to no act or language on Declarant's part indicating its intent to relinquish any rights under section 5.03 of the Declaration.

For the foregoing reasons, we affirm.