IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1222

Filed: 3 November 2015

Buncombe County, No. 13 CVS 3992

THE RESIDENCES AT BILTMORE CONDOMINIUM OWNERS' ASSOCIATION, INC., Plaintiff,

v.

POWER DEVELOPMENT, LLC and MOUNTAIN MORTGAGE, INC., Defendants.

Appeal by defendants from order entered 15 May 2014 by Judge Gary M. Gavenus in Buncombe County Superior Court. Heard in the Court of Appeals 21 April 2015.

> *Long, Parker, Warren, Anderson & Payne, P.A., by Ronald K. Payne, and Dunnuck Law Firm, PLLC, by Erin Dunnuck, for plaintiff-appellee.*

> *David R. Payne, P.A. by David R. Payne, for defendant-appellant Power Development, LLC.*

> *Asheville Law Group, by Michael G. Wimer and Jake A. Snider, for defendant-appellant Mountain Mortgage, Inc.*

DAVIS, Judge.

Plaintiff The Residences at Biltmore Condominium Owners' Association, Inc. ("the Association") filed this action seeking a declaratory judgment that various disputed areas within The Residences at Biltmore Condominium ("the Biltmore Condominium") were common elements of the Biltmore Condominium as opposed to properties retained by Power Development, LLC ("Power Development") in its

capacity as the declarant. Power Development and Mountain Mortgage, Inc. ("Mountain Mortgage") (collectively "Defendants") appeal from the trial court's order granting summary judgment in favor of the Association. After careful review, we affirm.

**Factual Background**

In 2005, Power Development purchased a 6.6 acre tract of real property on Biltmore Avenue in Asheville, North Carolina for the purpose of developing the Biltmore Condominium. On 12 December 2006, Power Development recorded the Declaration of Condominium for The Residences at Biltmore Condominium ("the Declaration") in the Buncombe County Registry in Book 4330, Page 1427 pursuant to N.C. Gen. Stat. § 47C-2-101 of the North Carolina Condominium Act. The Declaration included plat maps illustrating the plans for the Biltmore Condominium and showing the approximately 5.7 acres of the property that Power Development "desire[d] to submit . . . to the terms and provisions of the North Carolina Condominium Act." The Declaration addressed the rights and responsibilities of the Association, which was organized in November of 2006 through the filing of articles of incorporation with the North Carolina Secretary of State.

The Declaration also set forth the definitions of various terms that were contained therein. One such term was "condominium," which the Declaration stated "shall mean and refer to The Residences at Biltmore Condominium as established by

the submission of the Property, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions, to the terms of the North Carolina Condominium Act by this Declaration."

The Declaration also defined the term "'Declarant Retained Property' or 'Retained by Developer'" as

> property or other areas which will be retained by Declarant which are reflected on Exhibit "A" or the Plans attached hereto and which are not a part of the Common Elements or Units associated with this condominium and which are, in fact, held in ownership by Declarant. These areas must be built by the Developer but the Developer will keep these properties and may convey the same to the Association but is not required to convey the same.

The plat maps illustrating the Biltmore Condominium plans showed various shaded areas that were labeled "D.R.P." with a note explaining that D.R.P. was an acronym for "Declarant Retained Property." Some of the areas labeled "D.R.P." were inside condominium buildings where residential units were located. The Declaration stated that the Condominium was intended to be a "concierge condominium," meaning one that "has resources in place (i.e., on-staff concierge) to accommodate the *al* [sic] *carte* needs (identified within a concierge menu and individually billed per service requested) of the owner, guest, renter or other occupier of any one unit within the condominium."

On 28 September 2007, Power Development executed and recorded a commercial deed of trust in favor of The Bankers Bank, N.A. to secure a loan of $15,580,000.00. The deed of trust encumbered "Tract B," 2.074 acres of the condominium property that encompassed both the remaining units Power Development owned and the areas at issue in the present litigation.

Power Development defaulted on its loan, and foreclosure proceedings were initiated by the substitute trustee, Raintree Realty and Construction, Inc. While the foreclosure sale was pending, Power Development executed a document entitled "Supplemental Declaration of Condominium for The Residences at Biltmore Condominium" ("the Supplemental Declaration"), which was recorded in the Buncombe County Registry in Book 4854, Page 698. The Supplemental Declaration stated, in pertinent part, that (1) "when Power Development, LLC recorded the Declaration, the Declarant labeled certain portions of the common elements in the Condominium Plans attached to the Declaration as 'Declarant Retained Property'"; (2) these common elements labeled Declarant Retained Property are "critical for the operation of the hotel condominium known as The Residences at Biltmore Condominium and the individual unit owners' use and enjoyment" as they include electrical, plumbing, and telephone utilities; (3) "it was always the Declarant's intention that the property labeled as Declarant Retained Property . . . be a portion of the unit owners' common elements"; and (4) the original Declaration was "hereby

amended for the purpose of clarifying that all of the properties labeled as Declarant Retained Property in the Condominium Plans attached to the Declaration are Residential common elements.  As explained in Article III of the Declaration, each residential Unit Owner shall be the owner of an undivided interest as tenant in common of the Residential Common Elements."  No vote was held for the unit owners to approve this Supplemental Declaration.[1]

On 31 January 2011, Pios Grande Power Development, L.P. ("Pios Grande") purchased Tract B in a foreclosure sale, and the trustee's deed was recorded in the Buncombe County Registry in Book 4858, Page 1173.  Pios Grande subsequently conveyed its interest in Tract B by special warranty deed to Serrus Residences at Biltmore, LLC ("Serrus") on 2 November 2012.

Several months earlier, on 20 June 2012, a document entitled "Agreement to Transfer Declarant Retained Property & Rights" ("the Agreement") was recorded in the Buncombe County Registry in Book 4992, Page 620.  The Agreement was dated 7 April 2009 and stated that — contrary to the above-quoted language in the Supplemental Declaration — Power Development had retained the rights to "various common elements of the project known as The Residences at Biltmore" because these

---

[1] Power Development argues on appeal that the Supplemental Declaration was a legal nullity because (1) it sought to amend the original Declaration; (2) as a result, it required the approval of 67% of the Biltmore Condominium's unit owners; and (3) no vote was held.  However, for the reasons discussed below, we do not reach the issue of whether the Supplemental Declaration should be given legal effect.

rights were not included in the commercial deed of trust securing its outstanding loan. The Agreement then explained that in consideration for an additional loan from Mountain Mortgage, Power Development was transferring to Mountain Mortgage the rights it retained in

> [a]ny and all properties or other rights which were specifically and clearly retained by POWER by virtue of that certain declaration of condominium for The Residences at Biltmore dated 12/12/2006 and recorded in Deed Book 4330 at Pages 1427-1523; including all developer retained or declarant retained properties as identified on those certain plats and within the intention of the subject declarations and all amendments thereto[.]

The Agreement further stated that the properties retained by Power Development as the declarant were "clearly intended to entail . . . telephone boards, electrical boards, all communication boards as well as any other boards or areas needed to service the entire condominium. For example, all storage closets etc."

The same day the Agreement was recorded, Mountain Mortgage executed a licensing agreement granting a company called Biltmore Management, LLC ("Biltmore Management") "an exclusive license to use those rights and properties therein defined by [the Agreement]" that would terminate at the option of Mountain Mortgage if Biltmore Management ceased to be the manager of the Biltmore Condominium or its rental program. Following Serrus' acquisition of the Biltmore Condominium, however, the Association engaged a separate company, Southern Resort Group, LLC ("Southern Resort"), to act as the management company for the

Biltmore Condominium. In an addendum to the Association Management Agreement, it stated that Southern Resort was intended to be the exclusive management entity for the Biltmore Condominium.

On 16 September 2013, the Association filed the present action in Buncombe County Superior Court seeking a declaratory judgment. The Association's complaint alleged, in part, that the "recordation of the document captioned Agreement to Transfer Declarant Retained Property and Rights creates a cloud on the title of the Association members' common elements" and sought a declaration that (1) "the members of the Plaintiff Association are the owners of the common elements that were labeled 'declarant retained property' or 'retained by Developer' in the Declaration . . . free and clear of any claims of Mountain Mortgage, Inc."; and (2) the Agreement is "null and void and of no effect on the title of the property interests of the members of Plaintiff Association." Power Development and Mountain Mortgage filed answers to the complaint on 7 November 2013 and 15 November 2013, respectively.

On 25 February 2014, the Association filed a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. On 15 May 2014, the trial court granted summary judgment in the Association's favor, ruling that (1) "all areas, which had been marked as 'Declarant Retained Property' or 'Declarant Retained Areas' in the plans attached to the Declaration of Condominium for the

Residences at Biltmore Condominium recorded in Book 4330 at Page 1427 of the Buncombe County Registry are common elements and therefore owned by the individual members of the Plaintiff Association in their respective percentages"; and (2) the Association members' ownership of these areas was "free and clear of any claims of Defendant Mountain Mortgage, Inc. and Defendant Power Development, LLC." Defendants gave timely notice of appeal.

**Analysis**

The entry of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). An order granting summary judgment is reviewed *de novo* on appeal. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

The Association argues that summary judgment was properly granted in its favor for the following reasons: (1) no authority existed under the North Carolina Condominium Act ("the Act") for Power Development — as the declarant — to retain ownership of the areas designated in the Declaration as "declarant retained property"; (2) even assuming *arguendo* that a declarant could retain such ownership interests within a condominium in this manner, the areas within the Biltmore Condominium over which Power Development purported to reserve ownership were

not indicated in the Declaration and attached plats with the specificity required under the Act; (3) Power Development's alleged transfer of its ownership rights to the retained property to Mountain Mortgage did not comport with the Act's provisions concerning the transfer of declarant rights; and (4) the Supplemental Declaration clarifying that the areas at issue were actually common elements (rather than declarant retained property) was recorded in the Buncombe County Registry prior to the recording of the Agreement purporting to transfer ownership of those same areas to Mountain Mortgage. Because we believe that the Association's first argument is dispositive of this appeal, we need not address the alternative grounds advanced by the Association for affirming the trial court's entry of summary judgment in its favor.

The Association contends the Act expressly provides that separately owned units and common elements are the two exclusive types of property comprising a condominium. It then asserts that because the areas that were labeled "declarant retained property" in the Declaration and attached plans were not designated as units, they must — by default — be legally classified as common elements in order for the Biltmore Condominium to be consistent with the Act.

Power Development, conversely, argues that the Act does not prohibit "a developer from retaining property or spaces within the physical boundaries of the

Condominium" and that this is precisely what it did here.[2] It therefore asserts that these areas (designated by shading on the plat maps) were excluded in their entirety from the Biltmore Condominium and, in turn, from the requirements of the Act. Thus, according to Power Development, by virtue of the designated shading on the plat map and the inclusion in the Declaration of a definition for the term "declarant retained property" that expressly encompassed the disputed areas, the following propositions are true: (1) the areas at issue were neither individual units nor common elements; (2) Power Development — rather than the individual unit owners — retained ownership of these areas; and (3) by means of the Agreement, Power Development transferred ownership of these areas to Mountain Mortgage.

All of the parties agree that Power Development sought to — and, in fact, did — create a condominium by recording a declaration that subjected the property comprising the Biltmore Condominium to the terms and provisions of Chapter 47C of the North Carolina General Statutes. Thus, there is no disagreement among the parties as to the fact that the Act controls the resolution of this case.

The Act, codified in Chapter 47C of the North Carolina General Statutes, defines a condominium as

> real estate, portions of which are designated for separate

---

[2] Power Development asserts that its ability to retain ownership of these areas was derived entirely from its reservation of these properties in the Declaration and unconnected to its former status as a unit owner (which ended when it defaulted on its loan and the units it had owned were then foreclosed upon).

ownership and the remainder of which is designated for common ownership solely by the owners of those portions. Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners.

N.C. Gen. Stat. § 47C-1-103(7) (2005).

"A condominium is created pursuant to this Act only by recording a declaration." N.C. Gen. Stat. § 47C-2-101 cmt. 1 (2005). N.C. Gen. Stat. § 47C-2-105 sets out the required contents of the declaration, stating that it must contain "[a] legally sufficient description of the real estate included in the condominium" as well as "[a] description of any development rights and other special declarant rights reserved by the declarant, together with a legally sufficient description of the real estate to which each of those rights applies, and a time limit within which each of those rights must be exercised[.]" N.C. Gen. Stat. § 47C-2-105 (3), (8) (2005); *see also In re Williamson Village Condos.*, 187 N.C. App. 553, 556-57, 653 S.E.2d 900, 902 (2007) (noting that the Act "lists more than a dozen specific items that must be included in the declaration," including a description of the property and any special declarant rights), *aff'd per curiam*, 362 N.C. 671, 669 S.E.2d 310 (2008).

The fatal flaw with Power Development's position as to the legal classification of the areas at issue is that its interpretation is inconsistent with the terms of the Act. The defining feature of a condominium is that it is comprised of two — *and only two* — types of property: (1) units (defined as the "physical portion[s] of the

condominium designated for separate ownership or occupancy, the boundaries of which are described [in the declaration]"); and (2) common elements (meaning "all portions of [the] condominium other than the units"). N.C. Gen. Stat. § 47C-1-103(25), (4).

Power Development correctly notes that the Act permits a declaration to define terms contained therein in a manner that varies from the statutory definitions contained in the Act. *See* N.C. Gen. Stat. § 47C-1-103 (explaining that definitions of terms provided in this subsection apply to Chapter 47C and to declarations and bylaws "unless specifically provided otherwise or the context otherwise requires"). However, variations in defined terms cannot serve to alter the fundamental nature of a condominium pursuant to the Act. *See* N.C. Gen. Stat. § 47C-1-104 cmt. 3 (2005) ("All definitions used in the declaration and bylaws may be varied in the declaration, but not in interpretation of the Act.").

Power Development chose to create a condominium under the Act consisting of the property that ultimately formed the Biltmore Condominium. In so doing, it surrendered the right to maintain ownership of certain areas within the condominium property in a manner that was unauthorized under the Act.

Thus, Power Development cannot simultaneously maintain, on the one hand, that the Act applies to the Biltmore Condominium while, on the other hand, contend that, as the declarant, it reserved ownership of areas within the condominium

buildings that would otherwise constitute common elements pursuant to the unambiguous language of the Act. *See* N.C. Gen. Stat. § 47C-1-103 cmt. 5 ("[I]f a declarant sold units in a building but retained title to the common areas, granting easements over them to unit owners, no condominium would be created. Such projects have many of the attributes of condominiums, but they are not covered by this Act.").

It is true that, as noted above, the Act does recognize the concept of declarant retained rights, thereby permitting declarants to reserve certain rights with regard to a condominium project by expressly reserving such rights in the declaration. N.C. Gen. Stat. § 47C-2-105(8). For this reason, Power Development's alternative argument is that even assuming that the disputed areas were, in fact, part of the Biltmore Condominium, Power Development nevertheless retained ownership of them as a special declarant right that was permitted under N.C. Gen. Stat. § 47C-1-103(23). However, the right to ownership of the disputed areas that Power Development contends it reserved here far exceeds the scope of those special declarant rights permissible under the Act.

The Act defines "special declarant rights" as

> rights reserved for the benefit of the declarant to complete improvements indicated on plats and plans filed with the declaration (G.S. 47C-2-109); to exercise any development right (G.S. 47C-2-110); to maintain sales offices, management offices, signs advertising the condominium, and models (G.S. 47C-2-115); to use easements through the

> common elements for the purpose of making improvements within the condominium or within real estate which may be added to the condominium (G.S. 47C-2-116); to make the condominium part of a larger condominium (G.S. 47C-2-121); or to appoint or remove any officer of the association or any executive board member during any period of declarant control (G.S. 47C-3-103(d)).

N.C. Gen. Stat. § 47C-1-103(23). In order to properly reserve such rights, a declarant must specifically state in the declaration the rights it wishes to retain "together with a legally sufficient description of the real estate to which each of those rights applies, and a time limit within which each of those rights must be exercised." N.C. Gen. Stat. § 47C-2-105(8).

While acknowledging as a general proposition that the Act permits a declaration to provide for special declarant rights, the Association argues that the special declarant rights recognized in the Act do not include the right to retain ownership of property that is "located within a building in a North Carolina Condominium Project" and not designated as a unit. We agree. Although the official comment to N.C. Gen. Stat. § 47C-1-103 states that the above-quoted list of declarant rights enumerated in subpart (23) of N.C. Gen. Stat. § 47C-1-103 is not exhaustive, *see* N.C. Gen. Stat. § 47C-1-103 cmt. 13 ("The list [of special declarant rights], while short, encompasses *virtually* every significant right which a declarant might seek in the course of creating or expanding a condominium." (emphasis added)), a holding that the range of special declarant rights permitted by the Act is broad enough to

encompass a declarant's right to retain ownership of areas located within a condominium building yet not designated as a unit would be inconsistent with the essential nature of a condominium under the Act.

In reaching this conclusion, we are once again guided by the fundamental and defining features of a condominium: (1) that it is comprised of common elements and units; and (2) that unit owners, in addition to their separate ownership of their individual units, own an undivided interest in *all condominium property that has not been designated as a unit*. *See* N.C. Gen. Stat. § 47C-1-103 (4) (explaining that all portions of a condominium that are not units are common elements); *id*. cmt. 5 (explaining that if a declarant retained title to the common elements, the project would not legally constitute a condominium).

In urging this Court to accept its broad concept of special declarant rights, Power Development notes that a portion of the disputed areas is being used for management offices — a use the Act expressly recognizes as one that may be reserved by the declarant as a special declarant right. The specific statutory provision to which Power Development refers is N.C. Gen. Stat. § 47C-2-115, which provides as follows:

> A declarant may maintain sales offices, management offices, and models in units or on common elements in the condominium only if the declaration so provides and specifies the rights of a declarant with regard to the number, size, location, and relocation thereof. *Any sales office, management office, or model not designated a unit by the declaration is a common element*, and if a declarant ceases to be a unit owner, he ceases to have any rights with

> regard thereto unless it is removed promptly from the condominium in accordance with a right to remove reserved in the declaration. . . .

N.C. Gen. Stat. § 47C-2-115 (2005) (emphasis added).

Thus, pursuant to this statutory provision, a declarant desiring to maintain management or leasing offices may reserve the right to keep such offices on site, either in the units it owns or on common elements (for so long as the declarant remains a unit owner). However, this statute does not authorize a declarant to maintain offices on property that is *neither* a unit *nor* a common element. Instead, the statute expressly states that such an office is a common element in cases where it was not designated a unit in the declaration.

Thus, N.C. Gen. Stat. § 47C-2-115 does not permit a declarant that avails itself of the right to maintain offices on common elements to *own* these portions of the common elements. Rather, the right reserved under N.C. Gen. Stat. § 47C-2-115 is merely that of *use* of the property. *Ownership* of the portion of the common elements on which a management office is maintained — like ownership of all common elements — is vested in the unit owners jointly.

The invalidity of Power Development's argument is further demonstrated by the fact that the areas labeled "Declarant Retained Property" in the Declaration and attached plans not only contain management offices but also house utility boards, power breakers, water systems, fire alarm and sprinkler systems, and emergency

lighting systems that service various common elements and units within the condominium. Neither law nor logic supports the proposition that a declarant is permitted to reserve ownership of areas containing such critical safety equipment, thereby retaining the legal right to exclude unit owners and their condominium association from access thereto.

Nor are we persuaded by Power Development's assertion that the resolution of this appeal is affected by the fact that the Biltmore Condominium was created as a "concierge condominium" rather than a traditional condominium. The Act does not distinguish between a condominium that offers concierge services and one that does not. Rather, the Act sets out the fundamental requirements for *all* condominium complexes within the scope of Chapter 47C.

Power Development has not directed this Court to any caselaw from North Carolina or from any other jurisdiction that (like North Carolina) has adopted the Uniform Condominium Act ("UCA") that provides support for its position. Rather, the primary case upon which Power Development attempts to rely does not actually address the issue before us. In *MetroClub Condo. Ass'n v. 201-59 N. Eighth Street Assocs., L.P.*, 2012 PA Super 122, 47 A.3d 137, *appeal denied*, 618 Pa. 689, 57 A.3d 71 (2012), the condominium's declaration authorized the declarant, so long as it owned any units within the condominium, to reserve for itself the power to allocate unassigned parking spaces (which were limited common elements of the

condominium) to certain units as it saw fit. *Id.* at 140. The condominium association argued that the declarant, which still owned 17 of the condominium's 130 residential units at the time of the litigation, was no longer entitled to control and allocate these unassigned parking spaces because the declarant control period had ended. *Id.* at 142-43.

The Superior Court of Pennsylvania disagreed, holding that the declarant's reservation of the right to maintain control over these unallocated parking spaces while it remained a unit owner did not conflict with the provisions of the UCA. *Id.* at 147. In so holding, the court explained that (1) the provisions of the declaration addressing control of the unassigned parking spaces complied with the UCA's requirements concerning the designation of limited common elements and the method of allocating the use of such common elements to certain units; (2) as a unit owner itself, the declarant continued to "pay its proportionate share of common expenses" related to the maintenance of these limited common elements; and (3) the declarant's use of these limited common elements, as articulated in the declaration, was consistent with the UCA because, by definition, "although limited common elements are owned in common, their use is reserved for fewer than all." *Id.* at 147-49.

The court in *MetroClub* did not hold that the declarant in that case had reserved *ownership* over the areas at issue (as Power Development is arguing here),

noting instead that these common areas continued to be owned by the unit owners jointly. Thus, we do not believe that *MetroClub* provides any support for Power Development's position in the present case. Indeed, Power Development's reliance on *MetroClub* demonstrates its failure to recognize the crucial distinction between a declarant's reservation of the right to *use* portions of common elements (as was upheld in *MetroClub*) as opposed to a declarant's reservation of the right to retain *ownership* of such areas (for which Power Development has offered no legal authorization).

Because we reject Power Development's arguments regarding its ability to retain ownership of the disputed areas as inconsistent with the Act, we conclude that the trial court properly granted summary judgment in favor of the Association. We therefore need not address the Association's alternative grounds for upholding the trial court's order.

## Conclusion

For the reasons stated above, we affirm the trial court's 15 May 2014 order granting summary judgment in favor of the Association.

AFFIRMED.

Judges BRYANT and INMAN concur.