DEMBE, J.,
Before the court are two motions for summary judgment filed by plaintiffs. The first motion requires this court to determine whether a now deceased member of a limited liability company breached his fiduciary duties to the company and its members, committed fraud, tortiously interfered with a contract, converted funds for his personal benefit, and obtained unjust enrichment. For the reasons below, this court finds that deceased member converted company funds for his personal benefit, and obtained unjust enrichment. The second motion for summary judgment requires this court to determine whether defendants may maintain the counterclaims of contribution and breach of a limited liability agreement/breach of fiduciary duty. In addition, the second motion requires this court to determine whether defendants may maintain the claim seeking the winding-up of a limited liability company and the appointment of a liquidating trustee. For the reasons below, defendants may not maintain any of these surviving counterclaims.
BACKGROUND
Plaintiff, Braverman, Daniels and Kaskey, Ltd. (“plaintiffs” or “BDK”), is a law firm and a Pennsylvania limited liability company based in Philadelphia, *495 Pennsylvania.[1] Individual plaintiffs David L. Braverman (“Braverman”) and John E. Kaskey (“Kaskey”), are founding members of BDK along with Robert C. Daniels (‘Daniels”) who died on October 3, 2011.[2] Braverman was at all times relevant to this action the “managing member” of BDK. Individual defendants Sean J. Daniels and Christopher E. Daniels are the executors of defendant, the Estate of Robert C. Daniels (the “Estate of Daniels”).
THE DANIELS’ LIFE INSURANCE POLICY
BDK was founded by attorneys Braverman, Daniels and Kaskey pursuant to a Limited Liability Company Agreement (the “LLC Agreement”), which bears the signatures of each of the three founding members and became effective on January 1,2009.[3] The LLC Agreement contained a key—man life insurance provision which states in pertinent part:
The company [BDK] shall apply for, and maintain “key man” life insurance policies on the lives of...
David L. Braverman $3,000,000.00
Robert C. Daniels $3,000,000.00.[4]
*496 Pursuant to the key-man life insurance provision, BDK obtained a key-man policy (the “term policy”), issued by an entity named Banner Life Insurance Company (“Banner Insurance”).[5] The term policy identified herein decedent, Daniels, as the insured.[6] The term policy also contained the following provision:
CONVERSION
This policy may be converted to a new policy on the insured’s life.... The conversion may be made:
***
2. if we [the Insurer] receive the owner’s written request and application for conversion.
⅝⅜⅝
8. [T]he new policy will be subject to any assignment of this policy received at our office.[7]
At some point in 2003, BDK borrowed funds in the amount of $1,000,000.00 from an entity named “Bancorp Bank.”[8] To loan the funds, Bancorp Bank required collateral in the form of proceeds from the Term Policy. Consequently, on July 17, 2004 BDK, as the owner of the *497 policy, executed a “Collateral Security Agreement” which provided Bancorp Bank with a lien upon the proceeds of that policy. The Collateral Security Agreement specifically stated:
This assignment is collateral security for any and all liabilities of the undersigned [BDK] or any of them to the assignee [Bancorp Bank] now existing or that may hereafter arise in the ordinary course of business between any of undersigned and [Bancorp Bank]....
The undersigned [BDK] expressly agree that the assignee shall have the sole right to receive all benefits and to exercise all options and privileges described in the said policy....[9]
On July 19, 2004, Daniels notified Banner Insurance that the Collateral Security Agreement had created a lien upon the term policy. The notification letter from Daniels to Banner Insurance specifically stated:
I am now delivering to you herewith the Collateral Security Agreement, assigning whatever portion of the proceeds of the above-referenced life insurance policy is necessary to pay the pro-rata liability of the named insured, Robert C. Daniels, that is due and outstanding to the Bancorp Bank at the time of said named insured’s death.
David L. Braverman, as managing member of [BDK] has executed this assignment on behalf of the policy owner.[10]
*498 Beginning June, 2005, Daniels ceased practicing law with BDK. On September 8, 2005, Braverman and Kaskey formed Braverman & Kaskey, P.C. (“B&K”), a law firm and professional company based in Philadelphia, Pennsylvania.[11]
On October 20, 2005, BDK executed a beneficiary change form whereby ownership interest in the proceeds of the term policy was transferred from BDK to the Robert C. Daniels Irrevocable Deed of Trust (the “Daniels Deed of Trust”).[12] Braverman, as managing member of BDK, executed this document.[13] Subsequently, Daniels notified Banner Insurance that the Daniels Deed of Trust was the new owner of the term policy.[14] On June 12,2006, Banner Insurance acknowledged the change of ownership to the term policy.[15] Despite the change in ownership, the term policy continued to operate as collateral to the loan from Bancorp Bank, pursuant to the terms of the aforementioned Collateral Security Agreement.
On July 10, 2006, Daniels executed an application for a “Conversion Request.”[16] The application specifically instructed Banner Insurance to change the term policy into a “Continuity Lifetime” policy.[17] The application was accepted and Banner Insurance converted the term policy *499 into a Continuity Lifetime policy. Despite this conversion, the newly-created Continuity Lifetime policy was “subject to any assignment” in accordance with the terms of the term policy originally issued by Banner Insurance.[18]
On July 28, 2006, the Daniels Deed of Trust sold its policy to an entity named Coventry First, LLC (“Coventry”).[19] The contract of sale, signed by a Trustee on behalf of the Daniels Deed of Trust, specifically stated: “there are no liens on the policy.”[20] In conjunction with the sale of the policy, the Daniels Deed of Trust also executed a document titled Pennsylvania Life and Viatical Settlement Application (the “viatical settlement”).[21] The viatical settlement asked seller to answer whether or not the Continuity Lifetime policy was “subject to a lien.” The seller responded to this question by circling the answer “no,” and Daniels himself affixed his signature at the bottom the document.[22]
*500 On August 18, 2006, an entity named Ritchie Risk-Linked Strategies Trading (Ireland) II Ltd. (“Ritchie Risk”) acquired the Continuity Lifetime policy from Coventry.[23] In the written contract thereto, Coventry represented that the Continuity Lifetime policy, “to the Seller’s knowledge, [shall be] free of any Lien imposed in favor of any third party.”[24]
On June 20,2007, Ritchie Risk commenced Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of New York (the “bankruptcy proceedings”). On January 17, 2008, the Bankruptcy Court approved the sale of the Continuity Life policy from Ritchie Risk an entity named Nutmeg Life Settlement Trust (“Nutmeg”).[25] On January 17,2008, the Bankruptcy Court approved the sale of substantially all the assets of Ritchie Risk to Nutmeg, including the Continuity Lifetime policy.[26]
Daniels died on October 3, 2011, and Bancorp Bank filed a death benefit claim against the Continuity Lifetime policy, pursuant to the Collateral Assignment Agreement. Soon thereafter, Nutmeg filed with the Bankruptcy Court a motion to enjoin Bancorp Bank from pursuing any claim against the policy in any forum whatsoever. Bancorp Bank participated in the ensuing hearing to protect its lien interest. On May 22, 2012, The Bankruptcy Court issued its Memorandum Decision which reaffirmed the sale of the policy to Nutmeg and enjoined Bancorp Bank from *501 pursuing its claims against the Continuity Lifetime policy. Though Bancorp Bank could no longer assert a death benefit claim against the policy, it continued to assert its rights against BDK for the full balance of the loan. As of October 31, 2011, the payoff amount for the the loan and interest thereon amounted to $504,027.78.[27]
THE PITTSBURGH LAWSUITS
On April 2, 2003, Daniels and BDK agreed to represent two clients in two related lawsuits in Pittsburgh, Pennsylvania (the “Pittsburgh Lawsuits”). Under the terms of the two agreements, Daniels and BDK would receive compensation calculable as 33.3% of recovery, if any, plus any costs expended by BDK in pursuit of the litigation.[28] In the course of the Pittsburgh Lawsuits, Daniels and BDK were terminated as counsel, and Mr. John A, Caputo, Esquire (“Caputo”), replaced Daniels as counsel. On June 27, 2006, Daniels forwarded a letter to Caputo. In the letter, Daniels acknowledged receipt of partial payment for services which he and BDK had rendered in the Pittsburgh Lawsuits. The letter specifically stated:
Dear John:
⅜**
I do wish to acknowledge the receipt of your law firm’s check in the amount of...$14,719.26 in partial reimbursement of the costs that have been incurred by the law firm of Braverman Daniels Kaskey Ltd., Robert *502 C. Daniels, Ltd. and Sprague & Sprague in these matters. However, I do take great exception to your failure to remit the entire outstanding amount of costs incurred, i.e....$33,347.22...incurred, as per the retainer agreements that were executed by [both clients] at the time I and my former law firm of Braverman Daniels Kaskey Ltd. undertook these representations.[29]
On March 13, 2007, Caputo sent a letter to Daniels. This letter stated in pertinent part:
Dear Mr. Daniels:
***
this letter is sent to acknowledge that you and your former law firm...performed services [in the Pittsburgh Lawsuits] and accordingly, if there is a monetary recovery in either or both cases you and your former firm would be due fees, the amount of which will be determined in light of all the relevant circumstances existing and known at the time the fees are received by my office.[30]
On February 3, 2011, Daniels executed an “Escrow Agreement.” Under the terms of this agreement, the firm “Cooper & Ziegler” would hold in escrow any funds recovered by Caputo in the Pittsburgh Lawsuits. On February 16, 2011, Cooper & Ziegler sent to Daniels a cashier’s check, no. 6674250, in the amount of $18,627.29, *503 payable to “Braverman Daniels & Kaskey LLC.”[31] BDK never received the partial payment of $14,719.26 which Daniels had received from Caputo prior to June 27, 2006, nor the final payment of $18,627.29 which Cooper & Ziegler remitted to Daniels by letter dated February 16, 2011.
THE INSTANAT ACTION
Plaintiffs commenced the instant action in September 2013, and filed a complaint thereunder on November 8, 2001. In the complaint, plaintiffs have asserted the claims of breach of fiduciary duty in Count I, fraud in Count II, Tortious Interference (with Existing Business Relations) in Count III, Conversion in Count IV, and Unjust Enrichment in Count V.
On January 15, 2014, defendants filed preliminary objections seeking to dismiss the complaint. The court overruled defendants’ preliminary objections in their entirety on March 25, 2014.
On April 28, 2014, defendants responded to the complaint by filing an answer with new matter and six distinct counterclaims. Plaintiff filed preliminary objections to each of the counterclaims asserted by defendants. On July 3, 2014, this court sustained-in-part and overruled-in-part the preliminary objections to defendants’ counterclaims. As a result of this court’s decision, only three counterclaims survive: the first (Count I), is based upon the theory of contribution; the second (Count V), is based upon the theory of breach of the LLC Agreement/ breach of fiduciary duty; the last (Count VI), *504 is based upon defendants’ prayer for the appointment of a liquidating trustee.
On November 17, 2014, defendants filed a motion in limine seeking to preclude plaintiffs from offering at trial any testimonial evidence, or orally mentioning before the jury, any of the matters which occurred prior to the death of Daniels. By order dated November 20, 2014, this court denied the motion in limine.
Also on November 17,2014, plaintiff filed two motions for summary judgment: the first motion asks the court to enter judgment in favor of plaintiff and against defendants on all claims asserted by plaintiff in the complaint; the second motion asks the court to enter judgment in favor of plaintiff and against defendants on all counterclaims asserted by defendant.
On December 17, 2014, defendants filed a motion for reconsideration asking the court to vacate its prior order which had denied the motion in limine. Defendants’ motion for reconsideration, along with plaintiffs’ two motions for summary judgment, are open and ripe for a decision.
DISCUSSION
In Pennsylvania,
[sjummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the non-moving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear *505 that reasonable minds cannot differ, a trial court may properly enter summary judgment.[32]
I. Plaintiffs are entitled to summary judgment on the claim of conversion.
Plaintiffs’ motion for summary judgment asserts that Daniels misappropriated funds owed to BDK from the Pittsburgh Lawsuits.[33] Plaintiffs assert that this misappropriation constituted conversion for which plaintiffs are entitled to relief.
In Pennsylvania, conversion is defined as —
the deprivation of another’s right of property in, or use or possession of, a chattel, or other interference therewith, without the owner’s consent and without lawful justification.[34]
Specific intent is not required [to prove conversion], but rather an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff’s rights establishes the tort. Money may be the subject of conversion.[35]
In this case, Daniels, without justification, deprived BDK of its property rights in a portion of the proceeds from the Pittsburgh Lawsuits. The conduct of Daniels was inconsistent with the property rights of BDK, and the motion for summary judgment of plaintiffs is granted as to *506 Count IV of the complaint.[36]
II. Plaintiffs are entitled to summary judgment on the alternative claim of unjust enrichment.
Plaintiffs assert that they are entitled to summary judgment on the claim of unjust enrichment because Daniels misappropriated funds which he received for work he performed on the Pittsburgh Lawsuits on behalf of BDK. In Pennsylvania,
An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law. A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another.
The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.[37]
In this case, Daniels received from Caputo and Cooper & Ziegler funds totaling $33,346.55. The proceeds were conferred upon Daniels for the work which he had performed in the Pittsburgh Lawsuits on behalf of BDK. *507 Daniels retained the proceeds under circumstances which are inequitable to BDK, and the motion for summary judgment of plaintiffs is granted in part as to the claim of unjust enrichments.[38]
III. Plaintiffs are entitled to summary judgment on all the surviving counterclaims of defendants.
Plaintiffs filed a second motion for summary judgment asking the court to dismiss defendants’ remaining counterclaims which assert contribution (Count I), breach of the LLC agreement and breach of fiduciary duty (Count V), and appointment of a liquidating trustee (Count VI).[39]
In Pennsylvania,
[wjhere the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.[40]
In this case, defendants admit that that they “did not seek any discovery in this matter in order to preserve the protections of the Dead Man’s Act, 42 Pa. C.S.A. §5930.”[41] *508 Thus, defendants admit that they have not developed any evidence to prove the issues presented in their counterclaims, and this court has found no such evidence anywhere in the record. Defendants bear the burden of proving the issues asserted in their counter-claim and may not rest solely on their pleadings and answers. For this reason, the motion for summary judgment of plaintiffs as to defendants’ counterclaims is granted and the surviving claims of contribution (Count I), breach of the LLC Agreement and breach of fiduciary duty (Count V), and winding up and appointing a liquidating trustee (Count VI), are dismissed in their entirety.
ORDER
And now, this 30th day of March 2015, upon consideration of defendants’ motion for reconsideration of the court’s order dated November 20, 2014, and any response thereto, and for good cause shown, it is hereby ordered that the motion for reconsideration is granted and the order dated November 20, 2014 is vacated.

. Business Entity Filing History, Exhibit 3 to the motion for summary judgment of plaintiff, control no.14111940.

. Admission of defendant, the Estate of Daniels, in its response in opposition to plaintiffs motion for summary judgment, control no. 14111940.

. Limited Liability Agreement of Braverman Daniels Kaskey, Ltd. Exhibit 4 to the motion for summary judgment of plaintiff, control no. 14111940. Exhibit A attached to the LLC Agreement shows the following percentages of membership interest: Braverman 40%, Daniels 40% and Kaskey 20%.

. Limited Liability Agreement of Braverman Daniels Kaskey, Ltd., ¶15, Exhibit 4 to the motion for summary judgment of plaintiff, control no. 14111940.

. Life Insurance Policy Exhibit A to the motion for summary judgment of plaintiff, control no. 14111940.

. Id. p. 3. The term policy shows an effective date of October 8, 2003 and an expiration date of October 8,2033. The personal information statement contained in the term policy states that Braverman and Daniels were each 50% equity owners of BDK, and that Braverman had obtained from a different carrier a policy similar to the term policy in question. Id. p. 17 of 138 titled “personal information statement.”

. Id. p. 5.

. Letter extending maturity date of Loan no. 139002213, to BDK, introductory paragraph, Exhibit 6 to the motion for summary judgment of plaintiff, control no. 14111940.

. Collateral Security Agreement, Exhibit B to the motion for summary judgment of plaintiff, control no.14111940

. Letter from Daniels to Banner Life Insurance Company, Exhibit B to the motion for summary judgment of plaintiff, control no. 14111940.

. Business Entity Filing History, Exhibit A to defendants’ response in opposition to the motion for summary judgment of plaintiff, control no. 14111940.

. Beneficiary Change Form, Exhibit C to the motion for summary judgment of plaintiff, control no. 14111940.

. Id.

. Fax from Daniels to Banner Life Insurance Company, Id.

. Confirmation Letter, Exhibit D to the motion for summary judgment of plaintiff, control no. 14111940.

. Conversion Request: Application, Exhibit E to the motion for summary judgment of plaintiff, control no. 14111940.

. Id. p. 2 of 2.

. Life Insurance Policy, p. 5, Exhibit Ato the motion for summary judgment of plaintiff, control no. 14111940.

. Admission of defendants, response in opposition to plaintiff’s motion for summary judgment, control no. 14111940,¶ 20; Life Insurance Policy Purchase Agreement between Coventry First LLC as buyer and the Daniels Deed of Trust as seller, Exhibit F to the motion for summary judgment of plaintiff, control no. 14111940. Full transfer of the policy from the Daniels Deed of trust to Coventry underwent an intermediary stage. Through the intermediary stage, an entity named U.S. Bank, N.A. acquired the Continuity Lifetime Policy on behalf of its client, Coventry, on July 24, 2006. Exhibit H to the motion for summary judgment of plaintiff, control no. 14111490.

. Conversion Request: Application, l[3(iv). Exhibit F to the motion for summary judgment of plaintiff, control no. 14111940.

. Pennsylvania Life and Viatical Settlement Application, Exhibit G to the motion for summary judgment of plaintiff, control no. 14111940. A viatical settlement is a “transaction in which a terminally ill or chronically ill person sells the benefits of a life-insurance policy... for a lump sum cash payment equal to a percentage of the policy’s face value.” BLACK’S LAW DICTIONARY 13 77 (7th ed. 1999).

. Id.

. Master Policy Purchase Agreement, Exhibit I plaintiffs’ motion for summary judgment, control no. 14111940.

. Id., Section 3.02(a)(ii)(B).

. Complaint, ¶ 36; admission of defendants in their answer to the complaint with new matter and counterclaims, ¶ 36;

. Complaint, ¶ 37; admission of defendants in their answer to the complaint with new matter and counterclaims, ¶ 37.

. Payoff letter dated October 31, 2011, Exhibit J to plaintiffs motion for summary judgment, control no. 141Í1940.

. Engagement Letters dated March 21,2003, Exhibit A attached to plaintiffs praecipe to supplement, filed on April 14, 2014.

. Letter from Robert C. Daniels, Esquire to John A. Caputo, Esquire, dated June 27, 2006. Exhibit k to the motion for summary judgment of plaintiff, control no. 14111940 (emphasis supplied).

. Letter from John A. Caputo, Esquire, to Robert Daniels, Esquire, dated March 13, 2007, Exhibit F to the response of defendants in opposition to the motion for summary judgment of plaintiffs, control no. 14111940

. Cashier’s check, Exhibit O to plaintiff’s motion for summary judgment, control no. 14111940.

. Stimmlerv. Chestnut Hill Hosp., 602 Pa. 539,553,981 A.2d 145, 153-54 (2009).

. Motion for summary judgment of plaintiffs. Control no. 14111940, ¶¶ 53-61.

. McKeeman v. Corestates Bank. N.A., 2000 Pa. Super 117, 751 A.2d 655, 659 (2000).

. Shonberger v. Oswell, 365 Pa. Super. 481, 485, 530 A. 2d 112, 114(1987).

. Plaintiffs are entitled to partial summary judgment on the claim of conversion because Daniels, as a member of BDK with a 40% share in the ownership thereof, was entitled to retain 40% of the proceeds flowing from the Pittsburgh Lawsuits. Accordingly, defendants owe BDK 60% of the $33,347.22 which Daniels received as payment for work performed on behalf of BDK in the Pittsburgh Lawsuits.

. Metroclub Condo. Ass’n v. 201-59 N. Eighth St. Assodates, L.P., 2012 Pa. Super. 122,47 A.3d 137, 148 (2012)

. Plaintiffs are entitled to recover 60% of the fees collected by Daniels from the Pittsburgh Lawsuits. See footnote 36, supra.

. Plaintiffs’motion for summary judgment, control no. 14111941.

. Thompson v. Ginkel, 2014 Pa. Super. 125, 95 A.3d 900, 904 (2014), reargument denied (Aug. 18, 2014), appeal denied, 108 A.3d 36 (Pa. 2015).

. Response in opposition to plaintiffs motion for summary judgment, control no. 14111941, ¶ 70. The court notes that the Dead Man’s Act, 42 Pa. C.S.A. 55930, plays no role in the resolution of the claims of conversion and unjust enrichment asserted by plaintiffs in their complaint, as well as resolution of all the surviving claims asserted by defendants in their counterclaim.