# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Pamela M. Assalita,      :
                            :

             Appellant      :
                            :

           v.           :     No. 108 C.D. 2018
                            :     ARGUED: December 13, 2018

Midtown Square Condominium      :
Association      :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED: February 12, 2019**

Dr. Pamela M. Assalita (Owner) appeals from an order of the Court of Common Pleas of Centre County (trial court) (1) declaring that she is responsible for the maintenance and repair of a waterline branch deemed to be a limited common element exclusively serving her condominium unit located at Midtown Square in State College, Pennsylvania; and (2) entering judgment against her in the amount of $1000.95 for past repairs. We affirm the trial court's determination that Owner is responsible for the waterline branch but limit the monetary judgment to the amount of $155.45 due to lack of evidentiary support for the entire judgment.

The relevant background is as follows. In May 1987, Midtown Square Associates created the mixed-use condominium complex known as Midtown Square. (May 12, 1987, Declaration of Condominium "Declaration" at 1; Reproduced Record "R.R." at 14a.) Subsequently, the owners of commercial-office unit (C-O Unit) 102 subdivided their suite into two units, redesignating them C-O

Units 104 and 105. (October 5, 1990, Fifth Amendment to the Declaration at 2; R.R. at 272a.) In March 2004, Owner became the sole owner of C-O Unit 104. Her deed reflects that she is subject to the Declaration, the January 1988 amendment to the Declaration (Amendment), and the May 1987 bylaws (Bylaws). (September 1, 2017, Trial Court Opinion "Op.", Findings of Fact "F.F." Nos. 3-5.)

Turning to the disputed waterline branch, the trial court found that the common waterline enters from the street into a basement pump room at the front of the complex. In the pump room, the common waterline divides into separately metered waterline branches for each unit. (F.F. No. 6.) The waterline branch solely serving Owner's unit has frozen three or four times over the last couple of years, most recently in February 2015. (F.F. No. 7.) The parties do not dispute that a two-hundred-foot segment of the waterline serving Owner's unit runs through an unheated basement garage. (July 18, 2017, Trial, Notes of Testimony "N.T." at 48-49, and 91; R.R. at 174-75a, and 217a.) In any event, as the entity providing management services for Midtown Square Condominium Association (Association), Continental Real Estate Management (Continental) oversaw repairs to Owner's waterline branch in 2014 and 2015.

After the Association advised Owner that she was responsible for maintaining and repairing her waterline branch, she filed an action for declaratory judgment requesting, *inter alia*, that the trial court declare that (1) the Association is responsible for remedying the persistently freezing waterlines running from the pump house through the parking garage and into various residential and commercial units before any individual unit owner becomes responsible for repairing the individual waterline branch serving his or her unit; and (2) Owner shall not be responsible to pay for repairs necessitated by the freezing of any waterlines leading

from the pump room and into her unit until the Association undertakes a permanent fix.[1] (December 21, 2015, Action for Declaratory Judgment at 9; R.R. at 12a.) The Association counterclaimed for the costs of the 2014 and 2015 repairs to Owner's waterline branch.

Concluding that the disputed waterline branch was a limited common element under Section 2.2(x) of the Declaration because it served only Owner's unit, the trial court declared that Owner was responsible to pay for the repairs pursuant to Section 2.2(y) of the Declaration, which defines limited common expenses. In so determining, the trial court rejected Owner's argument that Section 7.1 of the Bylaws places the responsibility for maintaining the limited common element of waterlines on the Association's executive board as part of the common expenses. In support of its decision, the trial court cited Section 3203 of the Uniform Condominium Act (Act) providing that the declaration controls when there is a conflict between the declaration and the bylaws. 68 Pa.C.S. § 3203. Following the trial court's denial of Owner's motion for post-trial relief *nunc pro tunc*, Owner's appeal to this Court followed.

On appeal, we consider (1) whether the trial court erred in relying on the Declaration as a basis for concluding that Owner has a duty to maintain and repair the waterline branch serving her unit; and (2) whether the trial court erred in entering judgment against Owner in the absence of competent evidence of record to

---

[1] In June 2017, the Centre Region Code Administration issued a correction notice to Owner referencing an unprotected waterline in an unheated garage and directing that it must be sufficiently protected from freezing by a method prescribed by a Pennsylvania licensed engineer or architect on or before August 2017. The notice further provided that a building permit shall be required before any remedial work is performed. (July 18, 2017, Trial, Exhibit "Ex." P-26; R.R. at 281a.)

support the entire judgment.[2] Our review is limited to determining whether there is substantial evidence to support the trial court's findings of fact, whether it committed an error of law, and whether it abused its discretion. *City Council of the City of Reading v. Eppihimer*, 835 A.2d 883, 886 n.5 (Pa. Cmwlth. 2003). Our review of questions of law is plenary. *Wyeth Pharms., Inc. v. Borough of W. Chester*, 126 A.3d 1055, 1061 n.5 (Pa. Cmwlth. 2015).

**I**

As a framework for our analysis, we start with the basic premise upon which the trial court relied: when there is a conflict between a condominium declaration and the bylaws, "the declaration prevails except to the extent the declaration is inconsistent with [the Act]." 68 Pa.C.S. § 3203. Solely by virtue of that legislative mandate, bylaws are inferior in priority to declarations. However, a review of the different functions, purposes, and voting requirements of the respective documents also illustrates the inferiority of bylaws.

Turning first to declarations, we note that the Act does not define the term. *See* 68 Pa.C.S. § 3103 (relating to definitions). Nonetheless, the declaration has been recognized as the "'perpetual governing instrument for the condominium,' which 'may be amended by various parties at various times in the life of the project.'" *MetroClub Condo. Ass'n v. 201-59 N. Eighth St. Assocs., L.P.*, 47 A.3d 137, 144 (Pa. Super. 2012) [quoting 68 Pa.C.S. § 3219, Unif. Law Cmt. 1.]. In addition, the Act provides that "[a] condominium may be created pursuant to this

---

[2] Owner also posited an issue as to whether the Association should be equitably estopped from holding her responsible for the waterline. Although she averred that "[a]t no time in the past has the [Association] required any residential unit owner . . . to pay for such freezing waterpipe repairs[,]" she did not specifically raise an equitable estoppel issue. (December 21, 2015, Action for Declaratory Judgment at 4; R.R. at 7a.) Accordingly, she has waived this issue by failing to raise it below. Pa. R.A.P. 302.

4

[Act] only by recording a declaration executed, in the same manner as a deed, by all persons whose interests in the real estate will be conveyed to unit owners and by every lessor of a lease the expiration or termination of which will terminate the condominium or reduce its size . . . ." 68 Pa.C.S. § 3201. Notably, "[t]he declaration shall be recorded in every county in which any portion of the condominium is located in the same records as are maintained for the recording of deeds of real property[.]" *Id*. The Act also provides detailed provisions regarding amendments to declarations. 68 Pa.C.S. § 3219(d)(1).

Moreover, the Act enumerates what a declaration *must* contain. 68 Pa.C.S. § 3205. Pertinent here, it *must* contain "[a] description of any limited common elements as provided in section 3209 (related to limited common elements) and limited common expenses, if any, and *how they are to be assessed*." 68 Pa.C.S. § 3205(6) (emphasis added). Notably, the provision regarding limited common elements provides:

> (a) Allocation.—Except for the limited common elements described in section 3202(2) and (4) (relating to unit boundaries), *the declaration shall specify to which unit or units each limited common element is allocated. That allocation may not be altered without the consent of the unit owners whose units are affected*.

> (b) Reallocation. —*Subject to any provisions of the declaration, a limited common element may be reallocated by a recorded assignment executed by the unit owners between or among whose units the reallocation is made, or by an amendment to the declaration executed by those unit owners*. The persons executing the assignment or amendment to the declaration shall provide a copy thereof to the association.

> (c) Common elements not previously allocated. — *A common element not previously allocated as a limited common element may not be so allocated except pursuant to provisions in the declaration made in accordance with*

5

*section 3205(7) (relating to contents of declaration; all condominiums).* The declaration may provide that the allocations shall be made by deeds or assignments executed by the declarant or the association, or by amendments to the declaration.

68 Pa.C.S. § 3209(a)-(c) (emphasis added).

Additionally, the provision in the Act pertaining to assessments for common expenses states, in relevant part, that except as provided by the declaration, "[a]ny common expense associated with the maintenance, repair or replacement of a limited common element shall be assessed in equal shares against the units to which that limited common element was assigned at the time the expense was incurred." 68 Pa.C.S. § 3314(c)(1).

As for bylaws, we note that the Act also does not define that term. *See* 68 Pa.C.S. § 3103. Nonetheless, the comments to Section 3104 of the Act provide as follows: "Subject to the provisions of the declaration, the bylaws may contain any matter in addition to that required by the Act." 68 Pa.C.S. § 3104, Unif. Law Cmt. 3, Section 3-106. Further, the Act sets forth that bylaws *must* provide for matters relating to the executive board and officers and the method of amending the bylaws. 68 Pa.C.S. § 3306. As summarized in the comments to Section 3306: "Because the Act does not require the recordation of bylaws, it is contemplated that unrecorded bylaws will set forth only matters relating to the internal operations of the association and various 'housekeeping' matters with respect to the condominium." *Id.*, Unif. Law Cmt. 1.

## II

Turning to the specific issue of whether the trial court erred in relying on the Declaration in concluding that Owner was responsible for the disputed waterline branch, Owner argues that there is not a conflict between the Declaration

6

and the Bylaws. Instead, she maintains that the Declaration created the general rule for limited common element maintenance and that the Bylaws created a specific exception for waterlines.[3] Consequently, she argues that the specific bylaw provision should rule over the general declaration provision.

Owner's position is contrary to the law. She is necessarily urging the Court to construe the Declaration and the Bylaws together and conclude that the specific bylaw provision must control the general declaration provision. As noted, the two documents have different priorities, purposes, required subject matter, and voting requirements. Therefore, the essential question is not whether the specific should control the general, but rather whether the Association by virtue of the disputed bylaw improperly attempted to change the Declaration's assessment of a limited common expense by converting it into a common expense without satisfaction of all of the prerequisites of an amendment to the Declaration. We conclude that it was improper for the Association to attempt to change the assessment rules set forth in the Declaration through the mechanism of a bylaw.

In support of our determination, we first note the plain language of the applicable provisions from the Declaration as set forth below.

---

[3] The disputed bylaw pertaining to responsibility for maintenance of units provides:

> Each Unit Owner shall furnish and be responsible for and at his own expense, all of the maintenance, repairs, and replacements within his Unit and Limited Common Elements as defined in the Declaration; provided, however, that *such maintenance, repairs and replacements as may be required for the bringing of water and electricity to the Unit, shall be furnished by the Executive Board as part of the Common Expenses*.

(Article "Art." VII of the Bylaws, Section 7.1; R.R. at 84a) (emphasis added). In 1998, the Association adopted an amended set of bylaws. However, Section 7.1 remained unchanged.

Section 2.2 (x) of the Declaration defines "limited common elements" as follows:

> [T]hose portions of the Common Elements allocated for the exclusive use of a Unit or Units pursuant to Section 3209 of the Act or those portions of fixtures lying partially within and partially outside the designated boundaries of a Unit which Serve only that Unit including but not limited to chutes, flues, ducts, wires, conduits, bearing walls, bearing columns pursuant to Section 3202(a) of the Act.

(Article "Art." II of the Declaration, Section 2.2(x); R.R. at 20a.)

Section 2.2(y) of the Declaration defines "limited common expenses" as "the expenses, charges and fees associated with the maintenance, repair, replacement and use of Limited Common Elements to be borne by the owner of the Unit which is allocated or served by the Limited Common Element." (Art. II of the Declaration, Section 2.2(y); R.R. at 20a.)

Section 3.3 of the Declaration, pertaining to maintenance responsibilities, provides:

> Notwithstanding the ownership of the various portions of the Common Elements and the Units by virtue of the foregoing boundary descriptions, the Units, Common Elements, [and] Limited Common Elements . . . shall be maintained and repaired by each Unit Owner and by the Association in accordance with the provisions of Sections 3208, 3307, and 3314 of the Act, except as expressly set forth to the contrary herein.

(Art. III of the Declaration, Section 3.3; R.R. at 28a.)

Moreover, the Association obviously knew how and when to make an amendment to the Declaration as evidenced by the January 1988 Amendment lodged with the Recorder of Deeds and "providing for a reallocation of Limited Common Elements by execution of this Amendment by all Unit Owners between or among

8

whose units this reallocation is made." (January 25, 1988, Amendment at 1; R.R. at 233a.) In pertinent part, the Amendment provided that limited commercial-office elements include "all Common Elements allocated for the exclusive use of the Commercial-Office Units" and that expenses associated with such limited common elements include "all electrical, plumbing and HVAC systems." (*Id*. at 1 and 6; R.R. at 233a and 238a.) Further, the expenses associated with such limited common elements include "all electrical, plumbing and HVAC Systems . . . ." (*Id*. at 2; R.R. at 234a.) There is no dispute that Owner's unit is a commercial-office unit.

Accordingly, the Declaration prevails and Owner is responsible for the waterline branch exclusively serving her unit. We emphasize, however, that we are not ruling that she is liable for remediating the underlying problem contributing to and/or causing the periodic freezing because that issue is not before us.[4]

### III

Turning to the amount of the judgment, Owner maintains that the trial court erred in rendering a verdict in the amount of $1000.95 because there was inadequate documentation and other supporting evidence. In addition, she challenges Finding of Fact No. 8 wherein the trial court found that invoices for repairs were sent to her. Assuming that she ultimately is responsible for the waterline repairs, she contends that she should only have to pay the two 2015 waterline repair invoices in the amount of $155.45 and not the 2014 repair costs. Although we have determined that Owner is responsible for the repairs under the Declaration, we agree that she is liable for only $155.45.

---

[4] In response to the trial court's query as to the relevance of why the waterline freezes and who is responsible for addressing the cause, counsel for Owner stated: "I think why it freezes is relevant because I think one of the things we're agreeing to is that once the overall basement is fixed, she would agree to pay *after that*." (N.T. at 47; R.R. at 173a) (emphasis added).

9

The Association admits that its agent did not advise Owner of the need for repairs before they occurred. It further admits that it did not initially bill her for the 2014 repairs. In that regard, there is a work order log in the record showing four separate repairs for 2014. (July 18, 2017, Trial, Defendant's Ex. 16; R.R. at 303a.) However, as the agent for Continental acknowledged, Owner was not billed for the 2014 repairs and there are no 2014 bills in the record. (N.T. at 92 and 96; R.R. at 218a and 222a.) To that end, the agent acknowledged that he did not send invoices to Owner in 2014 in the absence of authorization from the Association's board. (N.T. at 85-86; R.R. at 211-12a.) Notably, the only invoices of record are for two different repairs performed in 2015 for a grand total of $155.45. (Exs. P-14 and P-15; R.R. at 260-63a.)

## IV

Accordingly, we affirm the trial court's determination that Owner has a duty to maintain and repair the waterline branch exclusively serving her unit but limit the monetary judgment to the amount of $155.45 due to lack of evidentiary support for the $1000.95 judgment entered.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Pamela M. Assalita,                                   :
                                                                          :
                        Appellant                             :
                                                                          :
                        v.                                        :      No. 108 C.D. 2018
                                                                          :
Midtown Square Condominium                       :
Association                                                    :

# **O R D E R**

AND NOW, this 12th day of February, 2019, the order of the Court of Common Pleas of Centre County is hereby AFFIRMED, but the judgment entered is reduced to $155.45 in accordance with the foregoing opinion.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge